This case is being conducted by Zoom due to the COVID crisis. My name is Nathaniel House. I'm a judge on the Illinois Appellate Court and presiding on this case with me are Justices Margaret McBride and Eileen Burke. Because this case is being conducted via Zoom, we're going to have a little bit different rules and where we're going to proceed is that the appellant and the appellee will be given in turn 10 minutes of uninterrupted presentation and the 10 minutes will be followed by questions by the judges. At the end, the appellant will be given an opportunity to present a short rebuttal and there may be questions after that. Does anyone have any questions about how we're going to proceed? No, Your Honor. Okay. The parties, would you please, the attorneys we're going to present today, please state your names and the party that you represent. Kyle Kaczmarek, appearing on behalf of the plaintiff appellant Rebecca Panero as administrator. Krista Frick, appearing on behalf of Advocate Trinity Hospital, Dr. Zuri Asitin and Dr. Giltz. Good morning, Your Honors. Katherine Bosky-Weiler, appearing on behalf of Dr. Evan McLeod. Okay. You're not going to present anything, Ms. Bosky? Your Honor, with the court's permission, Ms. Frick and I had agreed to divide our time. Ms. Frick will begin and I will back clean up as they say. Okay. Very well then. You can divide your 10 minutes. All right. Very well. If there are no other questions, Mr. Kaczmarek, you may proceed. Thank you. May it please the court. Um, obviously the first issue raised in our brief and the one that I think screams out for attention in this case is whether the verdict that was recorded truly represented 12 assenting jury decisions. And I think any reasonable reading of the record in this case makes clear that Ms. Montes could not be found to have truly assented to the verdict in this case. Over three days of deliberations, Ms. Montes expressed three different times that she was the one holdout in this case and did not consent to the verdict being pushed by the other 11. It started on the second day of deliberations when she delivered her first note where she stated she had reached her decision and the others wouldn't accept it but continued to try to sway her decision, which is a clear statement of coercion that she was being, there was an attempt to coerce her into changing her verdict, not persuade her. And she asked the court at the end of that note, when does it end? And this is after there was one full day of deliberations. This is on the second day of deliberations. The second note came and she reported that she was experiencing health problems now from the stress of the deliberations, elevated blood sugars and chest pain. In that note, she asked the court for help. Her note says, please help. Her first note asking when does this end was not addressed. Her question saying please help was not responded to. And deliberations were continued. On the third day of deliberations, three days now after she had been an 11 to one holdout, there was a purported verdict reach and when the jury was pulled and she had her first opportunity outside the influences of the jury room, she expressed that that did not represent her verdict once again for the third time. Again, this is her third now cry to the court for assistance in ending an 11 to one onslaught from 11 verdict, 11 jurors that did not agree with her that weren't allowing her to stick with her decision. Even after all that being sent back into the jury room one more time without any of her questions or concerns being addressed by the court, she was again, there was again a purported verdict reach. She was brought out again, a second poll was conducted and she continued to hesitate before finally giving in and saying it was her verdict. Under those facts, I don't think any reasonable judge or individual reviewing the facts can conclude that was truly her assent, which is the entire point of the polling process and truly a right that both parties, but in particular in this case, plaintiff has a right to have a unanimous verdict of 12 jurors, not a verdict from 11 jurors plus one who has been essentially given no other option but to change her verdict in order to end what is three days of 11 on one conduct in the jury room. Um, in this case, I think there are two extremely on point strong cases showing that this is a case that requires a remand for a new trial or that a mistrial should have been declared by the judge any number of times during the proceedings. Um, starting with Kellogg, people be Kellogg, the court there, the Supreme Court made clear that the point of the jury polling is to obtain an unequivocal expression from each juror that the jury should be opportunity should be given an opportunity for free expression unhampered by the fears or errors that may have attended the private proceedings in the jury deliberation room. And they say in Kellogg, if a juror indicates some hesitancy or ambivalence in their answer, the trial judge has a duty to ascertain the jurors present intent by affording the juror the opportunity to make an unambiguous reply. Now, in this case, if you're looking strictly at the second jury poll, the last poll that was ultimately accepted and then a verdict was entered upon, after all the prior notes over three days, after an hour and a half earlier stating, no, that is not my verdict, juror Montes continued to hesitate. And I read again from Kellogg, an unequivocal expression from each juror, unequivocal. If a jury indicates some hesitancy, then the trial judge's duty is to ascertain the jurors present intent. That did not happen here. The hesitancy was not addressed and a verdict was entered. I think people v. Smith, which is cited in Appellant's brief, is probably the most factually on point case that we have in our state. In that case, there was one juror who dissented from the verdict during the initial polling saying I voted guilty, but that was not what I wanted to do. Very similar to juror Montes' statement saying it was my verdict, but it no longer is my verdict during the first jury poll. In that case in Smith, the jury was returned to the jury deliberation room, just as was done here, then brought back out. They conducted a second jury poll. That original dissenter answered guilty. And then defense counsel made a record that the juror had hesitated when the court asked again for her verdict, hesitated, looked down, and it appeared to be uncomfortable. The appellate court there in remanding for a new trial found that the juror was not afforded an opportunity to dissent when re-polled because the court failed to follow up on her original answer or her answer, which was significant because her demeanor raised a question of whether she freely changed her vote. In this case, we have more than a question about whether she freely changed her vote. We know she did not freely change her vote because she spent three days deliberations asking the court for assistance and telling the court it was an 11 to 1 deadlock that the other jurors would not accept or allow her to stick with her verdict and told her, and this is in the jury note that was given to the court, told her that we cannot leave the room until I change my vote. So in this case, we do not have an unambiguous assent to the verdict that was ultimately entered, and therefore, we do not have a jury verdict. The appellees, the defendants in this case, in their brief cite to the Freeman case as support for their position, a more recent first district case. I think the facts of Freeman are quite distinguishable in this case. In Freeman, it was specifically noted that the trial court engaged in an open-ended discussion with the juror, asked her what she meant by duress, allowed her to answer an open-ended question about her feeling towards the verdict. They also noted that the juror never expressed concern for their health or welfare in Freeman, whereas in this case, we have the juror's note where I have elevated blood sugar and chest pain from the stress of this. So I think factually, it's distinguishable, but importantly, from Freeman is the dissenting opinion written, I believe, by Justice Connors, who goes through Kellogg in detail and explains exactly why the statements in Kellogg are so important in cases like this. There must actually be true assent to the jury's verdict. When there's an ambiguous response to the polling regarding the present assent to the verdict, the court must focus on the feelings towards the verdict return, and if they do not do that, then there is no way to truly say that they have assented to the verdict. Thank you. You can wrap up now, a couple of minutes. Yes, I don't see a timer, and I apologize. You know, there are other issues in this case. I think it's important to note that the court also made statements shortly after the polling towards the jury, stating that after the first jury polling, stating that they would be returned to the jury room, she wouldn't keep them there much longer, and that she would join them in there shortly before she then returned the jurors back into the courtroom and said, in light of the polling, you must continue deliberations. Again, those are statements isolating the one holdout juror, essentially explaining to the other 11, you're going to continue deliberations because this one the first verdict, and, you know, many of the cases cited in our briefs reference the importance that the court must recognize in terms of their influence over these jurors as being the top authority in that courtroom, and when a trial judge says to a jury, I don't expect to keep you in there much longer, and that I'm going to join you in there shortly, that jury, those jurors have the understanding that this case has been decided, that the judge is happy with our verdict, and we're done. Sending them back in again to continue deliberations after making those comments undoubtedly isolated Juror Montes, made her the target, made her the reason that they were deliberating on their third day and potentially into their fourth day at that and really, you know, violated every principle and idea expressed in the important cases on the issue, including Kellogg and People v. Smith. Again, we have other issues, and I'd be glad to take questions on those issues. I don't want to take up more time than I'm allowed. All right. Thank you. Justice McBride, do you have any questions? Yes. Mr. Kaczmarek, just in a really brief nutshell, what were the facts in People v. Smith? In People v. Smith, there was a single polling, and one of the jurors dissented saying, I voted guilty, but it's not what I wanted to do. And then the jury was returned to the jury room. The bailiff raised the issue that some juror at some point had asked him a question about the jury being deadlocked. And then when they brought the jury back into the room, there was a question from the court about if they had continued deliberations, and the foreman said, I don't really know, but why don't you maybe poll us again? And then they were re-polled, and the juror said, yes, that's my verdict now. And in that case, the appellate court reversed and said that you didn't follow up on her hesitancy in responding, so we can't conclude that she truly assented to the verdict. And I think those facts are closely on par with our facts here. If anything, I think our facts paint a far more... Did a sheriff get involved? It says in the case that the... In your case. In your case. No, in our case, a bailiff didn't get involved. But the point was, the bailiff was expressing that somebody had raised the issue of a deadlocked jury, which the court found important, and we had that in our jury note. Right, but you didn't have a sheriff getting involved conversing and talking about what a deadlocked verdict, did you? No, certainly not on the record. In this case, there were two prim instructions, Prim 1 and Prim 2. Did you object to those? Well, we didn't object to the giving of either instruction, but before each of those instructions, we requested a mistrial based on the note and the indication that they were deadlocked. All right. And the Supreme Court precedent, it goes back over 150 years, that when there's a question about polling, the court can either declare a mistrial or return the jury to deliberations. Is that right? You're aware of that? Yes. The Kell law goes back to... It refers to an earlier case, Wigmore cited, but the precedent is for over 175 years that the judge, in its discretion, can either declare the mistrial or send the jury back for deliberations. True. All right. In this case, the judge never isolated this juror because the judge, in the cases where they suggest isolation, the judge either didn't poll all the jurors or just ignored an answer to a question. In this case, the judge polled every juror. Did she not? She polled every juror, but Ms. Montes was singled out, asked to stand, asked questions in front of the other 11 jurors. And then again, when they were returned to continue deliberations, the court made the comment that based on the polling, you're going to have to go back and continue deliberations. Those were all statements isolating Ms. Montes. Did she have to go back and deliberate? She did. You're saying that under the case law, that's an isolating statement? There's a case just like that, where the court suggested that he or she would be, that they would be done or something, and then they were actually told that they were going to have to deliberate again. Are you, I can't think of the name of the case right now. I think that was Smith, People v. Smith. Okay. But you're saying the court, that no reasonable judge would have done what this judge Well, I think perhaps the judge had the option after the first poll to send the jury back or to declare a mistrial. But in this case, then we have even the next step, there was a second poll, where there was continued hesitancy. So again, There's nothing on the record that indicates that. In fact, isn't this the case where after the verdict, the juror went out into the hallway, and there was a lot of discussion. I don't know if it was with you, but with an attorney representing the plaintiff, and none of that has been mentioned here because it's improper, isn't it? Well, I would have two comments on that. Number one, that appeared in the record from the trial judge when ruling on the motion for a new post trial motion months later. That is not on the That's not truly a record of what happened in real time. That's a judge going back and saying, this is what I recall happening. I don't think we can conduct an evidentiary hearing where the juror, my co-counsel in the case, who was the one supposedly having the conversation with the juror in the hallway, and the judge would discuss what everybody saw and heard. I mean, in this case, we have the one position from the court who wasn't in a position. I think what's important here is that juror Montez approached the bench and made her statement that she felt threatened before the judge had the opportunity to leave the bench after the verdict was read. I mean, the judge was still on the bench. You haven't cited that because you know that's not appropriate. And the cases say that you can't try to attack a verdict with post interrogation of a juror. But here's my question. Forgetting that, putting that aside. It's not even relied upon by you. But you say the record reflects that after the second polling, the juror hesitated. Now there's no word or verbalization of that anywhere, is there? Well, exactly like in People versus Smith, I made that on the record. Immediately after the polling was concluded, I made the record and I said, judge, it doesn't come out on the transcript, but the juror hesitated and nobody disagreed with that assertion. And that's exactly what happened in People v. Smith. The defense attorney made the record that there was hesitation and the appellate court relied on that. Now here, I believe that maybe counsel will contest what you just said, but they did not agree with your characterization. And there's nothing, there is not a single word uttered on this record that would indicate any hesitation. I'm talking about words now, but I do think opposing counsel will contest your suggestion that they agreed that the juror hesitated after the second polling. After the second polling, when she was asked, is this now and was this then your verdict? I may have it blocked. She said yes. Did she not? She said yes. Okay. All right. I don't have any other questions. Thank you, Justice Burke. I have one question. When you look at the Smith case, the juror who disagreed with the verdict, the first go around on the first polling said he disagreed. Then they went back and they came back and the juror was asked again, is this, was this your verdict then and is it your verdict now? And there was a verbalization of some dissatisfaction. I think the juror said, I voted guilty, but I was dissatisfied with evidence. And that does give some indication that there's some dissatisfaction there. And here there was no such statement made by the sitting juror on the second polling. Didn't that make a difference in this case? There was unequivocal acceptance on the record. Again, I don't believe it was unequivocal because I think it, I think the, an attorney can make a record of what is observed in the courtroom, observing hesitancy. I mean, if we had to solely rely on the words, it could certainly be misleading. Well, I made that record in front of the court, in front of all counsel. And while they, the court did not respond in any way, opposing counsel certainly said, well, she didn't look ill. You know, she, you know, she didn't seem sick. Nobody said, hey, she didn't hesitate. She did hesitate and nobody disagreed with that. But I think the, another important distinction is the background of the case leading to, of this case leading to that, that second polling. It wasn't like the second polling was the first issue where juror Montez expressed that there was a problem going on in the jury room. I mean, there were three juror notes making very clear that they were deadlocked 11 to one starting on the first day. Subsequent to that, she expressed concerns over her health. She asked the court, when will this end? If I don't agree with the other 11, when will we be allowed to leave? Please help, she said. I think if you look in the context of the juror notes, the first juror polling when she said, no, that's not my verdict. And then the fact that after being forced back into the jury room to deliberate with the other 11 people, there was the hesitation. I mean, I guess at this point, the other counsel can disagree, but on the record itself, there was no disagree, disagreement to the fact that she did hesitate before giving her answer, which was the same record made in People versus Smith. I can't think of a situation where a record of a juror's, you know, hesitancy could be made otherwise, unless the juror said, you know, let me hesitate for a second and then, and then assented. All right. I don't have any other questions. Thank you, Justice McBride. Justice Berg, do you have anything else? No, right. Very well then. Ms. Frick, I'll give you a cue when five minutes have hit. Okay. Very good. Thank you. In the interest of time, I will only address the issues that plaintiff has raised. If the court is interested in any other issue, I'm happy to answer about those. I think it's important to start with that jury question and the jury question specifically, the second one regarding Ms. Montes claiming that her health was at issue. The timing of that note is very important. The timing of that note was at 930 in the morning before the jurors even gathered, before any deliberation had begun that morning. So that certainly wasn't her present state of mind. Whether she was feeling that way before, she did not communicate that. And this court is well aware, the first districts and other districts have addressed the issue of stress in a jury room. It is a stressful procedure. Now you have 12 people who are all trying to agree with one another. So the idea that she was feeling stress the morning before they even started deliberating, I don't know that that speaks to any issues that this court should be concerned with specifically as to coercion or that she was not able to proceed. Certainly there was nothing that prevented juror Montes from telling the judge, I am sick, I cannot continue to deliberate. And nothing else was said about that. I think it's also important to note that after that note was sent at 930 that morning, no further notes were sent by anyone, by any juror or by Ms. Montes that there were any issues that she was feeling badly or that she was being unduly pressured by any of the other jurors. Addressing some of the comments that have been made by counsel, specifically plaintiff's counsel's reliance on the Smith case, I think Smith is highly distinguishable. In that case, there were two jurors that descended. The one did say that she didn't want her verdict to be a guilty verdict. But there, unlike Judge Brosnahan in this case, the court sent the jury back to the deliberation room, but not to deliberate. There was no new verdict forms provided. And then the judge called the jury back out, not to give a new verdict, but simply to ask them, you know, hey, did you deliberate, even though they weren't given those instructions. And the key difference here is when that jury in Smith was re-polled, it was only the two dissenting jurors who were re-polled. That was isolation. The court made very clear that they were only asking those two jurors who had dissented, what's your verdict now? And in those, in that case in Smith, the juror, Juror Sims, changed her verdict in front of the court, secondary to the court's questioning. In this case, Judge Brosnahan followed the law of acuity. She determined that there was unambiguous dissent. Ms. Montes was asked, is this your verdict? And is it your current verdict? She said, no. Judge Brosnahan said, can you explain, was it your verdict when you were in the jury room and you signed the verdict form? She said, yes. And is it your verdict now? She said, no. Judge Brosnahan asked, so you changed your mind from the time you signed to the time you came out. She said, yes. Nothing prohibited Juror Montes from elaborating or from saying anything else or from saying, it was my verdict, but now I need to tell you that I was forced into it. She simply gave very unequivocal answers. She said, yes. She said, no. After knowing that the Juror Montes did dissent, Judge Brosnahan appropriately made the decision. She was going to send the jury back to the jury room with clean verdict forms, which I think are really important because it not only told Juror Montes, but it told all of the other jurors, we're starting from scratch. No one, including Juror Montes, is married to that form of verdict. We all get to start over. And they did. No jurors, no verdict, sorry, excuse me. No notes were sent during that time. And they deliberated for another 90 minutes. Truly showing that this was not a knee-jerk reaction, that Juror Montes didn't think I'm just going to say whatever I have to say to get out of here because I'm fearful or because I'm being coerced. It was another 90 minutes of good faith deliberation that this jury engaged in. And when Juror Montes returned to the courtroom and she was again polled, she said, yes, that is my counsel is speaking of and claim that everybody agreed. I would counter that. We did not agree that there was a hesitation. Plaintiff claimed that there was a pause. And our position was to the extent there was any pause, it was because this was a serious issue, because this was a jury verdict, because she had put a lot of thought into this. And anybody can take a reasonable moment to pause and say their answer. Juror Montes was clear that she was able to say no. She had done it before in front of the court. Speaking to the courts, as plaintiff says, the isolation of Juror Montes. They claimed that Juror Montes was isolated because she was asked to stand. It was a three-week trial. This jury saw that it was routine for when you're addressing the court or the judge that we all stood. And that's how that was raised. They also claimed that she was asked questions that no one else was asked. On this, I would argue plaintiff can't have it both ways. Okay. I think a review of the record as a whole of justices demonstrates that this was a unanimous verdict, that there was no coercion by the court and there was no evidence of coercion within the jury room that was improper. And we would ask that this court affirm the jury's verdict in favor of the defendants. All right. We'll hear from Ms. Bassett and then question both of you. Okay. Ms. Bassett. Very good. Thank you, Your Honor. May it please the court, Catherine Weiler, Catherine Basquio. The name is confusing to everyone. I'd like to just I'd like to follow up on why as a legal matter, this record establishes what you were speaking to Justice McBride, which is that the trial court properly polled the jury in every circumstance here in a manner that's consistent with the whole purpose of polling at all. And as you said, Justice McBride, the 175 years of precedent that have instructed trial courts of this state, how to properly poll a jury. The purpose is a straightforward one. The trial court is expected to ascertain whether or not this verdict is actually in the moment of the reading of the verdict, the verdict of the jurors. That's the whole purpose. And the reason jurors are asked in polling is to give them a final opportunity before the verdict is recorded to confirm. That is that jurors verdict. That is exactly what the trial court did here. That's all the trial court needs to know. Is this your verdict? And every case that we have looked at is is a case that speaks to that purpose, not why is that your verdict or why is that not your verdict? The purpose is, is that your verdict? And here on the first polling, Ms. Montes was given the opportunity to establish whether or not that was her verdict on the first poll. And she said no. At that point, the trial court did exactly, Justice McBride, what you said. There are two options. Either the trial court directs the jury to retire for further deliberations or the trial court discharges the jury. In this case, the trial court selected option one. The jury's verdict is not unanimous. There is a juror who has expressed dissent. The jury is sent back for further deliberations. That's what happened. And that's exactly what the jury did. It deliberated further and the jury was able to come to a unanimous verdict. And this comes back again, Justice McBride, I'm sorry to be singling you out, but the questions you were asking are exactly the point the defendants are raising in this case. The second time the jury came back, once again, the trial court properly asked each juror, all right, we're back. Was this your verdict then? And is this your verdict now? To give every single member of the jury the opportunity to confirm before the verdict is Ms. Montes said unequivocally, yes, that's my verdict now. Full stop. And while I realize on that same page of the transcript, plaintiff's counsel did suggest there was some hesitation, as Ms. Frick was saying, not only was it merely a pause, something entirely appropriate in that waiting moment, but defense counsel took the time to clarify immediately after plaintiff's counsel suggested there was some hesitation that actually Ms. Montes' physical demeanor demonstrated that she was fully composed. She understood the moment, perhaps she understood the weight of the moment, but she wasn't teary, she wasn't emotional, she wasn't having any physical issue. She simply gave her response to the question as yes. She affirmed her agreement with the verdict and that's all she need do. There is nothing further for the trial court to confirm. The only other point I would like to make clear is the idea that the trial court discussed the circumstances of meeting with that juror post-trial. Actually the trial court didn't simply put on the record what had happened post-trial during the post-trial hearing. The trial court took what to I think all of the defendants was the highly unusual step of asking all counsel to return to the courtroom within three days I believe after the jury gave its verdict and that's because there was a weekend because the trial court wanted to put on the record I had this conversation after defense counsel left the courtroom, this is where we left it with the juror. That's another important point just to understand the full context of exactly what was discussed. Whatever discussion was had in the courtroom with counsel is irrelevant. It happened the trial court made sure it was clear on the record that it happened when it happened and what that context was but it doesn't change the trial court's end result and it doesn't change what this court should do here. The ruling should be affirmed, the verdict should be affirmed, the judgment should be affirmed because the jury's verdict was unanimous. Very good right on time. Justice McBride do you have any questions? Well to either of you well I suppose I should point it at one or the other so Ms. Frick is there any significance to a jury that after you know a few hours of deliberating has become 11 to 1? Is there any case law that suggests that that's a red flag or something? Absolutely not um your honor and as this court well knows and this court has dealt with this issue in the past so often that is the case so often there are there is a majority against a minority and in cases where that minority cannot come to a verdict they cannot join the majority then it is a hung jury but that's not what happened here. Um and Ms. Bask um to you was there any um was there any problem I mean doesn't the second prim tell the jurors or one or two that they can they can um stand with their convictions? Aren't they instructed and weren't they so told that in this case? Yes absolutely your honor. All right and and I I think counsel's already agreed he did not object to the instructions but he had already made a motion for early motion um so but but doesn't that instruction tell the jurors um that you know they can they can disagree and if they can't agree with the others they they have to stand with their conscience? Yes your honor. So they were they were told that? Yes your honor. I don't have any other it was a three-week trial that's that's correct isn't it? Three weeks your honor three weeks. Okay thank you. Justice Burke do you have questions? I do have a question um to either Ms. Frick or Ms. Bask what was the time frame between the note regarding her medical issues and the prim instruction? The note that was sent on the morning that was at 9 30 in the morning they then went in to deliberate um and I believe it was about one o'clock in the afternoon that they came out with their verdict with their initial first verdict um when juror Montez said that that was not her verdict but between the time of that note in the morning all morning she deliberated until the afternoon there were no issues. And um the sheriff nobody in the court ever reported that there was any ongoing medical issues with Ms. Montez is that absolutely not no there was no such report. Thank you. Thank you. Okay all right um I have no further questions um Mr. Justice McBride anything else? Okay all right um Mr. Kaczmarek you can present your rebuttal. Yes um council's pointed to the you know they pointed out that after the first jury polling and the jury was sent back there was 90 minutes and I think council said 90 minutes showed good faith deliberation they deliberated further had meaningful deliberation that's 100 pure speculation I mean what we have in the record is three days of 11 on one the juror asking the court for help the court asked questions to the court when will this end please help wasn't addressed council argues that there was nothing preventing Mrs. Montez from going beyond the court's yes or no questions and and volunteering more information I think we're asking an awful lot of our jurors who may not have any experience in the jury room and have no legal experience what could Miss Montez have expected after sending her prior jury notes and getting zero response what could Miss Montez have expected when after being polled for the first time and she was finally given the opportunity to say hey this is not my verdict and she did what was the result she was sent back to the same room with the same people with no help when she had asked for help no assistance nobody asked her question of why did you change what happened the court here wanted to ask those questions I think those would have been the questions that the court here proposed that defense objected to proposed asking to juror Montez I think are the exact type of questions and good faith in questioning of a juror that needs to happen to truly determine assent all Miss Montez could have expected here if she continued to dissent during the polling is to be sent back to the jury room to continue deliberating unending again so I think we're asking way too much of our jurors to say hey if she's not falling over ill if she's not outwardly crying then we can say that she truly assented to the verdict if the standard is the juror has to show physical decline in their health they have to have a breakdown in the courtroom and start crying in order to for us to say you know what maybe she really didn't truly assent I think we've got way too high of a standard if a juror can send these notes express repeatedly that it's 11 to 1 and then during polling say no that's not my verdict only to be sent back again I think we've already asked too much of the jury in this case she has the right to stand on her verdict and at some point day after day if she sent back in for the in front of the same 11 she's going to give in to end it that doesn't mean she consented doesn't mean she has sense to the jury I mean she's given up which is exactly what should not take place thank you thank you the case is well argued and well briefed the case uh after a day of deliberations uh that's the note is it isn't that what the juror said after the first day of deliberations before prims or anything she said uh when will this end after is what isn't that what what happened the court hadn't even gone through prim prim at all on the second day of deliberations uh there were two notes that were sent one was the first note go ahead one was from the 11 against miss montez saying we can't convince her to change her mind and one was from miss montez saying they're trying to convince me to change my mind um when will it end when how much longer do they is it 11 to 1 those were the notes sent on the second jury day all right and you're suggesting that a judge should then without having done any prim which is what they're required to do the instructions are all codified but you're suggesting the judge should have then brought them all out and said um if you wasn't the court supposed to follow prim instructions well not engaging questions about well this will end after I decide that you've had enough time I mean the courts don't do that sort of thing because they are not supposed to do that and inject themselves into the deliberation process I have no disagreement with that and I after those two notes no prim was immediately given it was after um well there wasn't an issue with the prim being given the prim was given then the next day the second prim was given and then even after those two prim instructions she still had the repudiation of the verdict during the poll all right and in this case was this also true that when the judge sent them back after the first polling did she reread all of the instructions and give new verdict forms is that correct and she gave new verdict forms and didn't she read the instructions to the jury as if to be starting all over I I may be wrong I thought that that's what happened at the beginning of day three after she gave the note regarding the health not right when the polling but I could be wrong on the record okay I thought after the first polling when uh the court decided to send them back to begin deliberations anew she not only gave new verdict forms but she reread all of the instructions from this three-week jury trial I believe that was earlier in the deliberations I don't I do believe that came after the polling okay I think after the polling she just gave them a new instruction she gave them a clean set of instructions of the verdict forms and told them she didn't have a unanimous verdict so they had to continue deliberating I think the rereading had happened earlier in that day before the first part okay all right but she did give the instructions again she just did you don't think she read them to the jury she may have given physical copies of the jury instructions and she gave fresh copies of the verdict forms yes all right well we'll look at the record but thank you I don't have any other questions Justice Burke anything no thank you all right well again thank you uh the attorneys were very well prepared uh the briefs were well done uh this case will be taken under advisement and we will issue a decision in due course thank you very much